GROSS, J.
After his home was destroyed by a fire, appellee Raymond Roddy filed a claim with his insurer, appellant People’s Trust Insurance Company. People’s denied coverage for numerous reasons, one being the claim that Roddy had made material misrepresentations on his application for insurance. The case was submitted to a jury, which awarded Roddy $766,258.06 in damages.
There was no signed, written insurance application, nor did Roddy ever receive a copy of the policy in the mail. Roddy applied for insurance over the phone. People’s telephone representative did not remember speaking with Roddy, but she testified to her usual practice in processing applications and said that she checked boxes on her computer based on Roddy’s answers to her questions. One such box indicated that Roddy’s home had a burglar alarm, a fact that was not true. Roddy denied saying that his home had a burglar alarm. There was no recording of the phone conversation between Roddy and the People’s telephone representative.
On March 18, 2009, People’s entered into a consent order with the Florida Department of Financial Services. A witness from the Department testified about the conduct that led to the consent order, including the assertion that People’s was “advertising rates that were much too low” so that “there was no way that they could support them.” In addition, unlicensed agents were giving quotes “based on every available discount”; People’s software auto-populated the discounts whether or not an applicant claimed to have a device that would warrant a discount.
On appeal, People’s attacks the admission of the consent order and the testimony of the Department witness as being unduly prejudicial under section 90.403, Florida Statutes (2012). The evidence was relevant to the issue of whether Roddy made a misrepresentation in applying for *1073 insurance. To prove how the application was made, People’s relied on its usual business practice, where telephone agents always check application boxes to reflect information provided by an applicant. To counter this evidence, Roddy was entitled to present evidence of a contrary business practice embedded in the company’s software. “Evidence of the routine practice of an organization ... is admissible to prove that the conduct of the organization on a particular occasion was in conformity with the routine practice.” § 90.406, Fla. Stat. (2012). This evidence went to the heart of the case and was not “unduly prejudicial” under section 90.408.
On a separate issue, the trial court erred in instructing the jury about an adverse inference that could be drawn from a failure to produce evidence. “For the court to tell a jury that an adverse inference may be drawn from the failure to produce evidence invades the province of the jury.” Jordan ex rel. Shealey v. Masters, 821 So.2d 842, 346 (Fla. 4th DCA 2002) (footnote omitted). However, we find the error to be harmless. The instruction let the jury decide whether there was evidence within the defendant’s control that it could have preserved; it did not suggest to the jury that the defendant failed to produce evidence within its control. Cf id. at 346-47.
We have fully considered the remaining issues on appeal and find no error.
WARNER and LEVINE, JJ., concur.